UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

GONZALO REYES RODRIGUEZ,

Petitioner,

v.                                                      9:26-cv-01440 (AMN)

DAVID VENTURELLA *in his official capacity as Acting Director of Immigration and Customs Enforcement*; MARKWAYNE MULLIN *in his official capacity as Secretary of the Department of Homeland Security*; TODD BLANCHE *in his official capacity as Acting Attorney General of the United States*; PHILIP RHONEY *in his official capacity as Acting Field Office Director, Buffalo Field Office, Immigration and Customs Enforcement*,

Respondents.

---

APPEARANCES:                                            OF COUNSEL:

LAW OFFICE OF KATHY MANLEY                              KATHY E. MANLEY, ESQ.
26 Dinmore Road
Selkirk, New York 12158
*Attorney for Petitioner*

DEPARTMENT OF JUSTICE                                   ALEXIS M. OSBORNE, ESQ.
UNITED STATES ATTORNEY'S OFFICE
445 Broadway
Room 218
Albany, New York 12224
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.      INTRODUCTION

On July 26, 2026, United States Immigration and Customs Enforcement ("ICE") arrested

petitioner Gonzalo Reyes Rodruiguez ("Petitioner") during a scheduled check-in in Malta, New

York.  Dkt. No. 1 at ¶ 1, 10.  That same day, Petitioner filed an emergency petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking, *inter alia*, immediate release.  Dkt. No. 1 ("Petition").  This Court then issued an order directing the above-captioned federal officers ("Respondents") to show cause why the Petition should not be granted.  Dkt. No. 2.  The Court also set a briefing schedule, scheduled a hearing for August 5, 2026, and prohibited Respondents from moving Petitioner outside the jurisdiction of the Northern District of New York during the pendency of this matter.  *Id.*

When the Court filed its order, ICE was transporting Petitioner to the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, and Respondents subsequently requested that the Court amend its order to prohibit them from moving Petitioner outside of the Western and Northern Districts of New York.  Dkt. No. 4.  Based on Respondent's representations that the Northern District lacks a federal immigration detention facility and that BFDF is the closest such facility, the Court so amended its order.  Dkt. No. 5.

On July 31, 2026, after careful consideration of the parties' submissions, Dkt. Nos. 1, 6, the Court issued a short, written order granting the Petition and ordering the Petitioner's immediate release, Dkt. No. 7.  Respondents have submitted status reports indicating compliance with the order and stating that Petitioner was released that same day.  Dkt. Nos. 8-9.

The Court previously indicated that it would issue a longer written decision explaining its ruling in due course, *see* Dkt. No. 7 at 2,[1] and now sets forth that explanation.

---

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

## II.    BACKGROUND

Petitioner is a native and citizen of Nicaragua.  Dkt. No. 1 at 3.[2]  Plaintiff alleges that on July 26, 2026, he was detained at an ICE check-in at or near Malta, New York.  *Id.* at 5.  At the time of his arrest, Petitioner alleges that he had been residing in the United States, possessed a valid work permit, and had no removal case against him.  *Id.* at 5, 11; *see* Dkt. No. 1-1 (photo of work authorization approval notice).

In their response, Respondents assert that Petitioner entered the United States on or about August 26, 2022, near El Paso, Texas, without being inspected or admitted by an immigration officer.  Dkt. No. 6 at 1.  On September 9, 2022, Petitioner was paroled and then released subject to participation in the Alternatives to Detention program.  *Id.* at 1-2.  Respondents assert that Petitioner's Form I-94 shows that his authorized parole period expired on November 2, 2022.  *Id.* at 2; Dkt. No. 6-2 at 1.  Respondents assert that they detained Petitioner on July 26, 2026, at the ICE Albany Field Office in Ballston Spa, New York pursuant to 8 U.S.C. § 1225(b) ("Section 1225(b)").  Dkt. No. 6 at 2.

Petitioner asserts that his detention pursuant to Section 1225(b) is unlawful because he may only properly be detained pursuant to 8 U.S.C. § 1226(a).  Dkt. No. 1 at 11-12.  Petitioner therefore also asserts that his detention violates his Fifth Amendment Due Process rights and is arbitrary and capricious in violation of the Administrative Procedure Act.  *Id.* at 12-13.

## III.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241, a district court is authorized "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United

---

[2] The Petition contains two sets of numbered paragraphs, both starting from one.  For clarity, the Court cites to the Petition's page numbers as generated by CM/ECF.

3

States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  It

is well-settled that "[n]oncitizens are also entitled to challenge through habeas corpus the legality

of their ongoing detention."  *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing

*Boumediene v. Bush*, 553 U.S. 723, 771 (2008)).  "The 'necessary scope' of this review and

resulting relief 'in part depends upon the [procedural] rigor of any earlier proceedings.'"  *Id.*

(alteration in original) (quoting *Boumediene*, 553 U.S. at 781).  And "[t]he Supreme Court has

been unambiguous that executive detention orders, which occur without the procedural protections

required in courts of law, call for the most searching review."  *Id.* (first quoting *Boumediene*, 553

U.S. at 781-83, 786; and then citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 301-02 (2001)).

## IV.    DISCUSSION

### A.  Statutory Authority

In *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), the Second Circuit clarified

the respective applications of Sections 1226(a) and 1225(b).  "Section 1226(a) plainly applies to

noncitizens . . . who are present in the United States, but charged as inadmissible for entering the

country without inspection and admission."  *Barbosa de Cunha*, 175 F. 4th at 73.  By contrast,

Section 1225(b)(2) "applies only to (1) noncitizens who are present and have not been admitted,

and (2) are requesting (3) lawful entry into the United States after inspection and authorization."

*Id.* at 74.  And specifically, "Section 1225(b)(2)(A) applies only to a noncitizen who is both an

'applicant for admission' and 'seeking admission,'" which are two terms distinguished by their

temporal scope—the former "may be either someone applying right now or someone who applied

in the past," while the latter "refers only to a noncitizen currently seeking admission."  *Id.* at 74-

77.

Respondents acknowledge that the Second Circuit's holding in *Barbosa da Cunha* "appears to foreclose the interpretation adopted [by the Board of Immigration Appeals in *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025)] as applied to the circumstances presented here." Dkt. No. 6 at 2. As to those circumstances, Respondents also acknowledge that because Petitioner was apprehended and paroled in 2022, then detained while in the country in 2026, the Court is likely to find that his present detention is governed by Section 1226(a). *Id.* at 3.

Indeed, after reviewing the parties' submissions, the Court finds that *Barbosa da Cunha* is applicable here. Respondents admit that Petitioner initially entered the United States without inspection or admission and was later paroled into the country. Dkt. No. 6 at 1. Petitioner asserts that at the time of his arrest and detention in 2026, he was not seeking admission to the United States because he was already residing within the United States. Dkt. No. 1 at 11. Furthermore, Petitioner has been living in the United States for approximately four years and was detained well within the country. *See id.* at 5; Dkt. No. 6 at 1, 4. The Court accordingly finds that Petitioner is detained pursuant to Section 1226(a) and not pursuant to Section 1225(b)(2)(A). *See Sisalema Rea v. Ball*, No. 9:26-CV-01248, 2026 WL 1959270, at *2 (N.D.N.Y. July 2, 2026) (collecting cases).

**B. Due Process**

"Given that Petitioner's detention is pursuant to Section 1226(a), he is entitled to certain process." *Aguiar Olivares v. ICE Custodian*, No. 26-cv-203 (AMN), 2026 WL 686090, *7 (N.D.N.Y. Mar. 11, 2026). When determining the adequacy of process in the context of civil immigration confinement, courts weigh the three factors articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976): "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probative value,

if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gaspar v. Akshar*, No. 9:26-cv-118, 2026 WL 699369, at \*8 (N.D.N.Y. Feb. 17, 2026) (quoting *Velasco Lopez*, 978 F.3d at 851 (quoting *Matthews*, 424 U.S. at 335)).

Here, the Court finds that Petitioner's due process rights were violated. First, Plaintiff has established a liberty interest in being free from imprisonment—"the most significant liberty interest there is[.]" *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez*, 978 F.3d at 851). "And Petitioner's liberty interest is even more heightened because the deprivation of his liberty does not stem from any criminal adjudication." *Nany v. Blanche*, No. 26-cv-1187, 2026 WL 1842635, at \*4 (W.D.N.Y. June 26, 2026).

Second, Respondents do not assert that they conducted an individualized determination as to Petitioner's detention. Nor do they argue that Petitioner received any notice or opportunity to be heard. And nothing in the record indicates that any relevant circumstances have changed between Petitioner's release in 2022 and his scheduled check-in in 2026. *See* Dkt. No. 6 at 4; *see, e.g.*, *Mendez v. Field Off. Dir.*, No. 26-cv-337, 2026 WL 734347, at \*4 (N.D.N.Y. Mar. 16, 2026) ("[T]here is nothing in the record indicating that . . . there were changed circumstances between when [petitioner] was released on her own recognizance into the United States and when she was arrested that support the change in her detention status"). Thus, together with fact that Petitioner has no prior arrests or criminal record, *see* Dkt. No. 6-1 at 1; 6-3 at 2, the Court finds that there is a high risk of erroneous deprivation of Petitioner's liberty. *See Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest.").

6

Finally, while the Government has a strong interest in ensuring that noncitizens appear at future immigration proceedings and preventing danger to the community, "the Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." *Velasco Lopez*, 978 F.3d at 854. Here, the Court finds that the Government's interest is minimal and fails to overcome the weight of the first two factors because Petitioner has been living in the United States for four years without a criminal record, Petitioner holds a valid work permit, and Respondents have presented no evidence that Petitioner is a danger to the community or a flight risk.

### C. Appropriate Remedy

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008) (citations omitted). Respondents argue, however, that the proper remedy here is an individualized bond hearing before an Immigration Judge. Dkt. No. 6 at 3-5.

The Court disagrees. On the facts presented, a bond hearing is not necessary, and immediate release is the appropriate remedy for the due process violation in this matter. *See Sisalema Rea*, 2026 WL 1959270, at *4; *Parra v. Favro*, No. 26-cv-363, 2026 WL 1030870, at *7 (N.D.N.Y. Apr. 16, 2026) (collecting cases).

### V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Petition for writ of habeas corpus, Dkt. No. 1, is GRANTED; and the Court further

**ORDERS** that Petitioner shall not be re-detained without adequate notice to Petitioner and without an opportunity to be heard at a hearing where the Government will have the burden of

showing that his detention is authorized under 8 U.S.C. § 1226(a) and the burden to demonstrate by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk;[3] and the Court further

**ORDERS** that pending the issuance of any final removal order against Petitioner, Respondents are also enjoined from denying him bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances.

**IT IS SO ORDERED.**

Dated: August 11, 2026
       Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[3] Respondents also argue that in any such bond hearing, the Petitioner "should bear the burden of demonstrating that release is warranted." Dkt. No. 6 at 4. Here too, the Court disagrees. A majority of courts in this circuit, including this one, have held that that absent "any individualized assessment or identifiable government interest regarding Petitioner's initial detention, due process requires that the Government bear the burden of demonstrating dangerousness or flight risk by clear and convincing evidence at any bond hearing." *Hassan v. Bondi*, No. 9:26-cv-00319, 2026 WL 891602 (N.D.N.Y. Apr. 1, 2026) (Sannes, C.J.) (citing *Lieogo v. Freden*, No. 25-cv-06615, 2025 WL 3290694, at *5-6 (W.D.N.Y. Nov. 26, 2025)); *see also Quintanilla v. Decker*, No. 21-cv-417, 2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021) (joining the "overwhelming consensus of judges in this district in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention") (internal quotations omitted).